IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    *v.*<br><br>AHMED ALI KHAN | Criminal Action No.<br><br>1:14-CR-197-SCJ-LTW<br>First Superseding |

**Government's Response to Defendant's Motion to Reconsider Pretrial Detention**

The United States of America, by John A. Horn, United States Attorney, and William L. McKinnon, Jr., Assistant United States Attorney for the Northern District of Georgia, files this response to defendant's motion asking the Court to reconsider the Court's order detaining defendant. For the reasons stated below, the Court should deny defendant's motion.

1. **Introduction**

Defendant is charged in a multi-count superseding indictment with violations of Title 18, United States Code, Sections 371, 545, and 1425(a) and Title 21, United States Code, Sections 331 and 333. The Indictment alleges that defendant and others engaged in a conspiracy to illegally import misbranded drugs, primarily the drug that is the active ingredient in the prescription drug commonly known as Viagra.

1

Defendant was arrested on May 29, 2014, in the Northern District of Alabama. On June 2, 2014, defendant was interviewed by a pretrial services officer in Alabama. The officer also conducted an investigation into whether defendant should be granted a bond. The officer interviewed defendant, reviewed defendant's background and employment, and examined the nature of the offenses charged in the indictment. The pretrial services officer submitted a written report to the Magistrate Judge that included the officer's conclusion that there were no conditions or combination of conditions that would assure the defendant's presence as required. Therefore, the pretrial services officer recommended defendant be detained without bond. (See Pretrial Services Report, page 3).

Defendant waived a detention hearing in the Northern District of Alabama and reserved his right to have a hearing in this district. That hearing occurred on June 18, 2014, before Magistrate Judge Baverman. Also, on that date a detainer was lodged on defendant by the Department of Homeland Security. After hearing testimony from the case agent and argument from both parties, Magistrate Judge Baverman granted the Government's motion to detain defendant without bond. (Doc. 53). In his oral ruling made from the bench, Judge Baverman noted that the fact that a detainer had been lodged against defendant meant that if defendant was granted a bond, he would be taken into the custody of the Department Homeland Security and Judge Baverman could no longer assure that defendant would not be deported before trial. In his written order Judge Baverman noted that defendant is subject to an immigration detainer on

grounds that his marriage to a United States citizen is a sham and that defendant was not truthful to pretrial services in Alabama about whom he was living with at the time of his arrest.

Defendant appealed Judge Baverman's order granting the Government's motion for detention. The Court held a hearing on defendant's appeal on August 4, 2014. After briefing by the parties, on August 11, 2014, the Court granted the Government's motion. (Doc. 119).

**2. The Circumstances have not Sufficiently Changed so that the Court should Grant Defendant a Bond.**

   **A. Living Arrangements**

Defendant contends that circumstances have sufficiently changed so that the Court should reconsider the detention issue and grant him a bond. Defendant's first argument is that if he is released on bond, he can live with his sister and brother-in-law in Alabama, and that his sister and her family who had recently moved to the United States in 2014 have now established ties to the southeast. The fact that defendant now has one sibling who has established residency in the southeastern United States does not establish that defendant has sufficient ties to the community, so that he would not be a risk of flight. In fact, defendant does not have such ties, as the evidence presented previously is that defendant has family members who reside in India, Denmark, and Australia. Presumably, defendant still has close ties to family members in those countries, so defendant has places to which he could flee, if he is released. The fact that defendant's sister now has resided in the United States for two years does not overcome the Court's

concern that defendant would flee the United States and return to India or go to Denmark or Australia, if he has the chance.

Moreover, as the Court will recall there is substantial reason to believe that defendant made false statements about his living arrangements when he was arrested. Therefore, defendant's representation about where he plans to live, if he is released, is suspect.

As the Court will recall, defendant was arrested in Alabama. Upon his arrest he reported to the pretrial services officer in Alabama that he lived during the week at the address where he was arrested with his cousin and his cousin's wife. Defendant made no mention that he was living at that address with another woman. Defendant reported that he traveled to Louisiana on the weekends where he lived with his wife.

The case agent, Special Agent Owen, testified before Judge Baverman that at the time that defendant was arrested, he was residing at an apartment in Alabama that was not rented in his name. Agent Owen located this address through bank records she obtained during the investigation. Her efforts to locate defendant's residence by tracing his forwarding addresses from Decatur, Georgia where he once lived proved unsuccessful.

Prior to the arrest date an agent with FDA conducted surveillance at the apartment complex and made discrete inquiries about defendant. Neighbors told him that defendant lived in the apartment with his girlfriend. Neighbors also told the agent that defendant is at the apartment over the weekends with his girlfriend.

It was reported to Agent Owen by the arresting agents that the apartment was a one bedroom apartment. At the time of the arrest at 6:30 in the morning, only defendant and an unidentified female, who was not defendant's wife, were present at the apartment. It appeared to the arresting agents that they were jointly occupying the only bed in the only bedroom of the apartment. It appeared to the arresting agents that no one else lived there. It did not appear to the agents that defendant was living at this apartment with his cousin and his cousin's wife, as defendant reported to pretrial services in Alabama.

Defendant's false statement to pretrial services about his living arrangement was one of the reasons this Court and Judge Baverman concluded that defendant should be detained. Defendant's lack of candor with an officer of the court about his living arrangements at the time of his arrest demonstrated that defendant could not be trusted to abide by conditions of release. That fact has not changed with the passage of time. Defendant is still a flight risk because he was not truthful with the Court about his living arrangements.

**B. Defendant is still under investigation for marriage fraud which if established would lead to defendant losing his legal status in the United States, thus, providing defendant with a motive to flee.**

Defendant used his marriage to a United States citizen as the basis to adjust his status to a lawful permanent resident which is a necessary step before defendant can seek to become a naturalized citizen. According to the pre-trial services report, defendant represented that he lives with his wife in Louisiana on weekends and with his cousin and his cousin's wife during the week. (Pretrial

Services Report, pages 1-2). However, defendant is still under investigation for entering into a sham marriage for the purpose of gaining immigration benefits and that fact, along with the current charges, is the basis for the immigration detainer that was lodged against defendant.

Notably, there is no mention in defendant's current motion about defendant living with his wife if he is released. That is not surprising given the strong evidence that defendant's marriage was a sham.

At the detention hearing before Judge Baverman Agent Owen testified that defendant's wife was convicted of armed robbery in 2011 in Louisiana after she married defendant. She served about three years in prison based upon that conviction. Despite claiming to be in a long distance relationship with his wife, at the time defendant was arrested he could not provide a phone number for her.

Defendant told pretrial services that his wife worked for a construction company. It did not appear that her position was managerial or professional in nature. Therefore, there would be a question about why defendant and his wife lived in separate states and saw each other only on the weekends. If the marriage was a legitimate marriage, then one would expect that defendant's wife could obtain similar employment in Alabama where she could live fulltime with her husband. Moreover, defendant owned a business in Georgia before he moved to Alabama and defendant owned a different business in Alabama. That raises two issues, first, if the marriage was legitimate, then there does not appear to be a financial reason why the defendant's wife would need to live and work in a different state. Secondly, if the marriage was legitimate and defendant was fully

supporting his wife financially, there should not be a reason why defendant's wife would commit an armed robbery.

### C. Defendant has the financial means to flee.

Another reason proffered by defendant as to why he should get a bond at this time is that after being incarcerated for nearly two years he no longer has the financial means to flee. However, the evidence presented previously established that there was substantial revenue generated from the importation of the pills that was unaccounted for in the investigation. That money is still unaccounted for and is still available to defendant to use to flee and support himself in another country. The circumstance of defendant's access to funds that would allow him to flee also has not changed.

Again, as the Court will recall, the investigation established that defendant and his brother were the organizers and leaders of the conspiracy. The other defendants worked for them as drivers and warehousemen. They picked up the shipments of merchandise at the direction of defendant and his brother, repackaged the contents of the shipments at the direction of defendant and his brother, and delivered the repackaged merchandise at the direction of defendant and his brother. The co-defendants were paid in cash by the hour. Defendant and his brother handled all of the business aspects of the conspiracy.

During the investigation federal agents discovered bank accounts that defendant controlled which were used to send more than $2 million U. S. dollars to China over several years. Because the investigation determined that the illegal imports were coming from China, the Government contends that the $2 million

was payment for the merchandise that was illegally imported. However, nearly all of the proceeds of the deposits made into these accounts were wire transferred to China. Only minimal balances were left in the accounts between wire transfers to China.

The conspiracy undoubtedly generated substantial income for defendant and his brother beyond the $2 million which was sent to China to pay for the merchandise. But still the Government is not aware of where that money is.

Defendant's unlawful conduct generated a substantial amount of unreported income that would be available to defendant to use to flee. That conclusion is firmly rooted in an understanding that a criminal conspiracy that generated at least $2 million in proceeds which were used to pay for the illegal product generated substantial income beyond the $2 million. That income is still unaccounted for by the Government.

**D. Defendant has a motive to flee.**

In his motion defendant contends that he has served nearly as much time in custody as he is likely to get, if he is convicted. Therefore, defendant contends that he lacks a motive to flee, because he is not likely to serve much, if any, additional time in custody, if he is convicted.

However, the Government disagrees. If defendant is convicted of the Title 21 offenses, defendant's Sentencing Guidelines range will be calculated based upon the fraud section, that is, Section 2B1.1. See Appendix A. Therefore, the value of the misbranded pills that defendant imported into the United States and distributed will largely determine defendant's custody guideline range. The

Government estimates the value to be between $1.5 million and $3.5 million dollars. With two additional points for more than 10 victims, the Government estimates defendant's offense level to be level 24 with a custody guideline range of 51-63 months. Therefore, defendant has served less than half that sentence, and if released, defendant would still have a substantial motive to flee to avoid serving the remainder of his sentence.

   E. **The strength of the Government's case continues to weigh in favor of detention.**

Previously, the Court determined that strength of the Government's case was factor that weighed in favor of detention. That fact has not changed.

Defendant's business was not legitimate because of the way that the business operated, as alleged in the manner and means and overt acts sections of Count One. Defendant and his brother caused the shippers from China to mislabel the shipments of male enhancement products as coffee, tea, and beauty products. Defendant and his co-defendants used multiple mailbox facilities to receive the products. The mailboxes were opened in multiple business names that falsely stated the nature of the businesses that was using the mailboxes. The defendants would open multiple mailboxes on the same day in different locations under different business names. The defendants rented multiple storage facilities to store the merchandise. The storage facilities also were opened in fake business names. The defendants regularly moved their operation to different storage facilities.

Defendant's fraudulent conduct should be a significant factor in a decision to detain defendant. The way defendant operated his business overwhelmingly establishes that defendant knew that what he was doing was a crime. Defendant caused the shippers to mislabel the shipments and defendant used multiple mailboxes opened in multiple business names to receive the product. Defendant caused the product to be stored at multiple storage units that were also opened using multiple business names. Defendant and his co-defendants falsely stated the nature of the businesses to the stores where he rented the mailboxes and to the storage units where he stored the products. None of the businesses names that were used were legitimate businesses. At the time defendant and his co-defendants were arrested, federal agents executed search warrants on three storage units where they were storing the product. The agents seized more than one million pills that would be characterized as male enhancement products. If defendant believed he was operating a legitimate business there would have been no reason for him to have taken the fraudulent steps he did in order to hide what he was really doing.

Therefore, the evidence against defendant is strong. Not only does this fact provide reason for the Court to detain defendant, but the strength of the Government's case provides further motive for defendant to flee to avoid conviction and imprisonment.

### F. Defendant's fraudulent conduct establishes that defendant likely will not abide by the conditions of pretrial release.

Previously the Court also considered that defendant engaged in significant fraudulent conduct in deciding that there were no factors that the Court could impose that would assure defendant's appearance as required. That factor has not changed with the passage of time.

Defendant used fake business names and moved his operation repeatedly in order to evade detection by law enforcement. There is evidence that defendant committed marriage fraud in order to gain lawful status in the United States. Defendant falsely represented to the pretrial services probation officer that he lived with cousin at his cousin's residence when the record establishes that defendant's cousin did not live there and defendant lived there with a woman who was not his wife.

Defendant and his co-defendants used multiple mailbox facilities to receive the products. The mailboxes were opened in multiple business names that falsely stated the nature of the businesses that was using the mailboxes. The defendants would open multiple mailboxes on the same day in different locations under different business names. The defendants rented multiple storage facilities to store the merchandise. The storage facilities also were opened in fake business names. The defendants regularly moved their operation to different storage facilities to evade detection.

Defendant's conduct prior to and upon his arrest demonstrates that he is not trustworthy. There is no reason for the Court to believe that defendant will abide by the conditions of pretrial release and appear for trial as required.

## Conclusion

In 2014, the pretrial services officer, Judge Baverman, and this Court concluded that there are no conditions or combination of conditions of pretrial release that will reasonably assure that defendant will appear for trial as required. In the foregoing pleading, the Government has demonstrated that defendant still has substantial motive and the financial means to flee to avoid conviction, continued imprisonment, and deportation thereafter. Moreover, defendant's conduct demonstrates his lack of trustworthiness and that he would not abide by conditions of release that the Court might impose. The passage of time simply does not mitigate in favor of the Court reconsidering its previous order and granting defendant a bond at this time. Simply put, the passage of time has in no way changed the circumstances that led the Court to conclude that defendant should be held without bond. Defendant's motion should be denied.

Respectfully submitted,

JOHN A. HORN
*United States Attorney*

/s/WILLIAM L. MCKINNON, JR.
*Assistant United States Attorney*
Georgia Bar No. 495812
William.mckinnon@usdoj.gov

**Certificate of Service**

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

March 21, 2016

/s/ WILLIAM L. MCKINNON, JR.
WILLIAM L. MCKINNON, JR.
*Assistant United States Attorney*